Black *vs.* The State of Georgia.

WILEY BLACK, negro, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. It was a maxim of the common-law, that a man shall not be twice put in jeopardy for the same offence.
2. The plea of *autre fois acquit* is good only when the acquittal was on a sufficient indictment.
3. The rule to determine whether an indictment is sufficient to sustain a conviction is, would the judgment be arrested if the defendant were found guilty. If it would, a verdict of not guilty under it, would be no protection ; otherwise it would be.
4. Where a verdict of not guilty has been rendered in favor of a party, though under a decision of the Court that the indictment under which it is rendered, is too defective to admit testimony to be given in to convict the party ; yet if that decision was wrong, and in fact, a conviction could have been maintained under the indictment, such verdict and judgment, when pleaded, will protect the party against a subsequent conviction for the same offence. WALKER, J. dissenting.

Attempt to commit Larceny. *Autre fois acquit.* Decided by Judge VASON. Sumter Superior Court. April Term, 1867.

Wiley Black was charged with a misdemeanor, as follows : "for that the said freedman, Wiley Black, on the ninth day of April, in the year eighteen hundred and sixty-seven, in the county aforesaid, did then and there unlawfully and with force and arms, for that the said Wiley Black, freedman, did, in the said county, on the day aforesaid, make an attempt to commit the offence of simple larceny, but did fail in the perpetration of such offence, for that the said Wiley did attempt wrongfully and fraudulently, to take and carry away one thousand dollars, the property of Michael H. Stephens, the said one thousand dollars being the lawful currency of the United States, with the intent to steal the same, contrary to the laws of said State, the good order, peace and dignity thereof."

The parties announced ready for trial, the jury was empanelled and sworn, and the Solicitor General read to the jury the said bill of indictment, and was about to introduce the evidence for the State.

Defendant's attorney objected to the introduction of the evidence "on the ground that the charge as laid in the bill of indictment, was too defective to admit of proof sufficient to convict."

This objection was sustained by the Court, and the jury then and there returned, on said bill of indictment, a verdict of not guilty.

By order of the Court said Black was held in custody, a new bill of indictment was found against him for the same offence, and upon this new bill he was put on trial.

Defendant plead *autre fois acquit* and relied upon the first bill of indictment and the verdict thereon to sustain the plea. The Solicitor General demurred to the plea. The demurrer was sustained by the Court.

The defendant was convicted on this second bill of indictment and fined fifty dollars and costs.

The error assigned for review is, sustaining the said demurrer, and ordering the defendant to be tried on this second bill of indictment.

SAMUEL C. ELAM, COBB & JACKSON, for plaintiff in error.

N. A. SMITH, Solicitor General, for the State.

WALKER, J.

Wiley Black was indicted for an attempt to commit larceny; and pleaded not guilty. A jury was empanelled, and the first witness for the State placed on the stand. Before any testimony was given in, defendant objected to the introduction of any evidence, "on the ground that the charge, as laid in the bill of indictment, was too defective to admit of proof sufficient to convict." The Court sustained the objection, and permitted the jury to render a verdict of not guilty. By order of the Court, Black was held in custody, a new bill for the same offence was found, and the next day defendant was again arraigned and pleaded *autre fois acquit*. This plea was overruled by the Court, and upon the issue of not guilty,

Black *vs.* The State of Georgia.

defendant was convicted, and brings the case up, alleging error in the overruling of his plea.

1. The provision incorporated in our constitution, that no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb, is much older than the constitution. It was deeply imbedded in the common-law. In Wetherel vs. Darby, 4, Rep., 40a, decided in the 28th year of Elizbeth, it is held that "a man's life shall not be twice put in jeopardy for one and the same offence." In Vaux's case, Ib., 45a, in 33d Elizabeth, it is said: "The maxim of the common-law is, that the life of a man shall not be twice put in jeopardy for one and the same offence," and that is the reason and cause why *autre fois* acquitted, or convicted, of the same offence, is a good plea.

2. This a leading case, and in addition to what is already quoted, decides that "the plea of *autre fois acquit* is a good plea only when the acquittal is upon an indictment sufficient in law."

3. The rule to determine whether an indictment is sufficient in law is, would the judgment be arrested if the defendant were found guilty under the indictment; if it would, a verdict of not guilty would be no protection, because the indictment would be insufficient in law; otherwise it would be a protection. Or, as expressed by Wharton, Am. Cr. Law, 193: "If the prisoner *could* have been legally convicted upon any evidence that *might* have been legally adduced, his acquittal on that indictment may be successfully pleaded to a second indictment; and it is immaterial whether the proper evidence were adduced at the trial of the first indictment or not." Rex vs. Sheen, 2 Car. & P. 634: (12 E. C. L. R., 776) People vs. Barrett & Ward, 1 J. R., 66-77; 3 Greenl. Ev. Sec. 35; 1 Ch. Cr. L., 454.

By the Code, Sec. 4516, an indictment shall be sufficiently correct, which states the offence in the language of the Code, or so plainly that the nature of the offence charged may be easily understood by the jury. By Sec. 4517, no motion in arrest of judgment shall be sustained for any matter not affecting the real merits of the offence charged in the indict-

ment. Tried by these rules, we think the first indictment preferred in this case, sufficiently technical; provided the case is in a condition that we have the right to express an opinion upon its sufficiency.

In the propositions here laid down we all concur; the difference between us arises as to the application of these principles to the facts of the case.

4. By whom shall the sufficiency of the indictment be determined? My associates say, that when a verdict of not guilty has been rendered in favor of a party, though under a decision of the Court that the indictment upon which it is rendered, was insufficient to sustain a conviction, yet if that decision was wrong, and in fact a conviction could have been maintained, under the indictment, such verdict and judgment, when pleaded, will protect the party against a subsequent conviction for the same offence; that in law, the party really was in jeopardy, though it was erroneously held that he was not; that the question upon the validity of the indictment must be determined by the Court when the record of acquittal is introduced; and the judgment, showing upon what ground the verdict was rendered, cannot be given in to affect it; that though the verdict be rendered without any evidence, upon the motion of the defendant, upon the ground that the indictment is insufficient, yet when he pleads it as an acquittal of the offence, he may insist that he induced the Court to commit an error, and that the indictment was good, and he entitled to be discharged from further prosecution. These I understand to be the views of the majority, and accordingly they reversed the judgment of the Court below.

From this judgment I dissent, for the reason that I think the defendant was not "lawfully acquitted." In Vaux's case it is said that the defendant must be lawfully acquitted. I have examined many cases on this subject, and I find that in very many of them, the parties had been tried upon the merits—indeed, this appears to have generally been the case. Some were decided upon special verdicts, but this I apprehend differs little from general verdicts. In some of the cases the juries, failing to agree, had been discharged without the con-

Black *vs.* The State of Georgia.

sent of the defendants. In most of the cases, the subsequent trials were predicated upon the omission of some material allegation in the first bill of indictment. Vaux's case, Barrett & Ward's case, Sheen's case, *supra;* The King vs. Emden, 9 East. R., 437; The King vs. Clark, 1 B. and B.; 473; (5, E. C. L. R., 748) Rex vs. Birchenough, 7 Car. & P., 574; (32, E. C. L. R., 766). I think I have not found a single case where a party has been allowed to take a verdict because the indictment was defective; that it has been held a protection against a subsequent prosecution. On the contrary, I think both reason and authority are the other way.

The old rule permitted the prosecuting officer to *Nol. Pros.* at pleasure. This often worked great hardships upon defendants, and our penal code remedied this evil by taking away from the State the power to *Nol. Pros.* a bill after the case had been submitted to the jury; and to guard against acquittals on mere technicalities, required all exceptions which go merely to the form of the indictment to be made before trial; and all demurrers and special pleas to be made in writing, so that the prosecuting officer should be notified before submitting the case to the jury. Such are the remedies provided by the Code. After the case has been submitted to the jury no exception can be taken to the indictment, except such as would be good in arrest of judgment. "Motion for a verdict for a defect in the indictment, is in effect a demurrer." Jordan vs. The State, 22, Ga. R., 556. Here the defendant moved to take a verdict because of the insufficiency of the indictment. The Court, before whom the case was proceeding, sustained the motion and adjudged that the indictment was insufficient. That was a Court of competent jurisdiction, and its judgment stands in full force. By what means does this Court, in a collateral way, obtain authority to review that decision, and in effect reverse it? I know of no such authority. In 2 Leading Cr. Cas., 554, it is said, "if the former trial resulted in a verdict of guilty, but upon an indictment so defective that no valid judgment could be pronounced upon it, and none has been pronounced, it is no bar to a subsequent prosecution. Citing authorities. And this is said to be so although

judgment was arrested on the first indictment for an insufficient cause; *for it having been done on the defendant's own motion, he cannot be allowed to impeach it.*" 3 Scammon, 363. In The People vs. Casborns, 13 J. R., 350, the Supreme Court of New York, says: "The defendant on his arraignment pleaded that he had before been tried and convicted for the same felony; that upon his motion, the judgment had been arrested, and that he had been discharged from that judgment. It is admitted that the former and present indictment are in every respect similar. To this plea the District Attorney demurred; the plea was overruled, and the defendant was thereupon tried and convicted, and sentenced to imprisonment in the State prison. It was decided in the People vs. Barrett and Ward, 1 J. R., 66, that a person after acquittal, might be indicted and tried the second time, if the first indictment was erroneous, so that no good judgment could be given upon it; and when a Court of competent jurisdiction arrest a judgment, *at the instance of the defendant, it must be intended, legally, that the indictment was vicious,* for the judgment cannot be reviewed on a writ of error; as an arrest of judgment is a mere refusal, on the part of the Court, to give judgment, every Court is bound to pay that respect to a Court of co-ordinate jurisdiction as to presume its judgment to be according to law, when it is presented for consideration collaterally. It is stated here that the two indictments are in every respect similar; but this is not so pleaded, and if it had been, the consequence would be the same; as already observed, in this collateral way, we must presume, from the judgment being arrested, that the indictment was erroneous, and if erroneous, then a conviction would not bar another good indictment. *It is in vain to say either that the former* indictment *was good,* or that this being like it, must be holden to be bad also, because the other was adjudged to be bad. We must take it as a *settled point* that the other indictment was *bad, however the fact may be;* and we are not to be told that this is a bad indictment, merely on the authority of the sessions. We must see if it be bad and this is not even pretended."

I have made this long quotation from the opinion delivered

Black *vs.* The State of Georgia.

by Justice Spencer, because the reasoning of that able Judge sustains my position.    Although it was not pretended that the first indictment was bad, yet as a Court of competent jurisdiction had so decided, it was a "settled point" that the indictment was bad "however the fact may be."    And so I insist in this case.    In that case, stress was laid upon the fact that the judgment was obtained on the motion of the defendant.    It was not for him to say that it was erroneous.    He was concluded by the judgment in his favor, rendered at his instance, and from which there was no appeal.

The judgment, as to the insufficiency of the indictment against Black, was a judgment against the State, and which could not therefore be carried up for review.    It was a final judgment upon the question made; and that question was whether the indictment was sufficient or not.    It was a judgment of a Court of competent jurisdiction and stands in full force.

I am not willing, nor do I think this Court has the authority, in this collateral way, to obtain jurisdiction, and review the decision of the Court below.    I now lay out of view entirely the question whether the first indictment was sufficient or not; it is enough, in my judgment, that a Court of competent jurisdiction so decided, and that judgment remains in full force.    I never have been able to see how a party could obtain a valid acquital upon a decision of the Court that the indictment is too defective to sustain a conviction.    How a party who asserts that an indictment is too defective to sustain a conviction, and induces the Court so to decide, can be heard to insist that the indictment was good after all, and that a verdict rendered thereon, and in consequence of such decision, was conclusive of his innocence, I cannot understand. The indictment was adjudged to be too defective to admit proof under it of guilt; but when guilt is about to be proved, under an indictment admitted to be good, the defective indictment, with the verdict of acquittal, is sufficient to exclude the proof of guilt and so shield the guilty from punishment.    I think the law works no such inconsistencies; and I therefore dissent from the judgment rendered in this case.

Judgment reversed.