301 Ga. 148
FINAL COPY

S17A0086.  MAJOR v. THE STATE.

HUNSTEIN, Justice.

We granted this interlocutory appeal to address whether the former[1] version of OCGA § 16-11-37 (a), Georgia's Terroristic Threats statute, is unconstitutionally overbroad and vague.  For the reasons that follow, we affirm the judgment of the trial court that the statute is constitutional.

The stipulated facts show that in September 2014 Appellant Devon Major, who was a student at Lanier Career Academy, posted the following message on his Facebook page:

> Bruh, LCA ain't a school. Stop coming here. All y'all ain't going to graduate early. Why? Because there are too many of y'all f***ers to even get on a computer. I swear, and there's so much drama here now, Lord, please save me before, o [sic] get the chopper out and make Columbine look childish.

Shortly after the statement was published, a resource officer at Major's school saw the post and contacted law enforcement.  Officers then contacted

---

[1] Because the incident at issue took place in September 2014, we review the version of the statute in effect at that time.

Major who admitted posting the statement. He was arrested and indicted for threatening to commit a crime of violence against another "in reckless disregard of causing such terror" in violation of OCGA § 16-11-37.

Major subsequently filed a pre-trial demurrer/motion to quash challenging the indictment, alleging that former OCGA § 16-11-37 (a) was unconstitutional on its face and as applied to him because it violated Major's First Amendment right to free speech and his Fourteenth Amendment right to due process. The trial court denied the motion, finding the statute to be constitutional, but granted Major a certificate of immediate review. Major filed an application for interlocutory appeal, which we granted inquiring as to whether former OCGA § 16-11-37 (a) is unconstitutionally void for vagueness and overbreadth because it permits conviction based on recklessness.

1. *Overbreadth*

Major first argues that former OCGA § 16-11-37 (a) is overbroad as it unconstitutionally permits prosecution for protected speech. Generally, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (Citation and punctuation omitted.) Ashcroft v. American Civil Liberties Union, 535 U. S.

2

564, 573 (II) (122 SCt 1700, 152 LE2d 771) (2002); accord Final Exit Network, Inc. v. State of Ga., 290 Ga. 508 (722 SE2d 722) (2012). The United States Supreme Court has recognized a few narrowly defined forms of expression that are categorically excluded from First Amendment protection, see United States v. Alvarez, 567 U. S. 709 (132 SCt 2537, 183 LE2d 574) (2012) (enumerating categories of historically unprotected speech, such as defamation, obscenity, and fraud), which include the communicating of "true threats," see Virginia v. Black, 538 U. S. 343 (III) (A) (123 SCt 1536, 155 LE2d 535) (2003).

However, content-based laws regulating speech that are not included in these narrow categories of unprotected speech are subject to "exacting scrutiny." (Citation and punctuation omitted.) West v. State, 300 Ga. 39, 40 (793 SE2d 57) (2016). Indeed, "[s]uch restrictions are only valid if they are 'narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.'" Id. (citing Broadrick v. Oklahoma, 413 U. S. 601, 611 (93 SCt 2908, 37 LE2d 830) (1973); State v. Fielden, 280 Ga. 444 (629 SE2d 252) (2006)).

Here, the State clearly seeks to regulate threats to commit any crime of violence. Such a prohibition "'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" (Citation omitted.) Black, 538 U. S. at 360. See also R.A.V. v. City of St. Paul, Minn., 505 U. S. 377, 388 (112 SCt 2538, 120 LE2d 305) (1992) ("threats of violence are outside the First Amendment"). Furthermore, the government may regulate or completely ban speech proposing illegal activity. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U. S. 489 (III) (102 SCt 1186, 71 LE2d 362) (1982). "We nonetheless have the obligation to ensure that, in its zeal to promote this worthy aim, our legislature has not unwittingly curtailed legitimate modes of expression in a real and substantial way." Scott v. State, 299 Ga. 568, 574-575 (3) (788 SE2d 468) (2016). "With these principles in mind, we begin our analysis, applying a de novo standard of review to the judgment of the trial court." West, 300 Ga. at 42.

"To assess the extent of a statute's effect on protected expression, a court must determine what the statute actually covers. Accordingly, the first step in any overbreadth analysis is to construe the statute in question." (Citations

4

omitted.)  Scott, 299 Ga. at 570 (1).  Pursuant to the rules of statutory construction, we

> presume that the General Assembly meant what it said and said what it meant.  To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.)  Deal v. Coleman, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).  If the statutory text is "'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end."  Id. at 173.

The statute in question read as follows:

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence, to release any hazardous substance, as such term is defined in Code Section 12-8-92, or to burn or damage property with the purpose of terrorizing another or of causing the evacuation of a building, place of assembly, or facility of public transportation or otherwise causing serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience. . . .

Former OCGA § 16-11-37 (a).  The plain language of the statute prohibits threats to commit any crime of violence with either the purpose of terrorizing

5

another or in reckless disregard of the risk of causing such terror or inconvenience. While Major concedes that the portion of the statute regulating purposeful threats is constitutional,[2] he contends that the statute's reckless scienter is overly broad because it punishes protected speech by looking to the mind of the person receiving the threat (i.e., the reasonable listener) rather than the state of mind of the speaker, and because recklessness does not require a showing of specific intent and therefore does not meet the definition of a "true threat." We disagree.

It is well established that recklessness requires a person to act with "conscious disregard for the safety of others," Currid v. DeKalb State Court Probation Dept., 274 Ga. App. 704, 707 (2) (618 SE2d 621) (2005), meaning that "one is aware that his conduct *might* cause the result, though it is not substantially certain to happen," 1 W. LaFave, Substantive Criminal Law § 5.4 (f) (2003) (emphasis in original). See also Elonis v. United States, ___ U. S. ___ (135 SCt 2001, 2015 192 LEd 1) (2015) (Alito, J., concurring in part and

---

[2] Though both the trial court and the State relied on this Court's decision in Lanthrip v. State, 235 Ga. 10 (218 SE2d 771) (1975), to argue that the statute's reckless scienter is constitutional, Lanthrip is, in fact, not controlling in this case as that case found the communication of a threat with the *purpose* of terrorizing another to be constitutional and did not address the reckless scienter currently before us.

dissenting in part) ("recklessness exists 'when a person disregards a risk of harm of which he is *aware*'") (emphasis supplie);[3] Arrington v. Trammell, 83 Ga. App. 107, 111 (62 SE2d 451) (1950) ("The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference of kind." (Citation and punctuation omitted.)). This is so because a reckless mindset requires a person to consciously act in a manner which they know could cause

[3] Though we find Justice Alito's concurrence instructive in this matter, we find Major's reliance on the majority opinion in Elonis to be misplaced. In Elonis, the United States Supreme Court focused on the construction of a federal statute criminalizing the communication of a threat via interstate commerce, which, unlike the Georgia statute before this Court, did not include any mens rea requirement. The Elonis majority specifically declined to address any First Amendment issue, instead holding that criminal liability could not be imposed merely based upon the perception of the reasonable person, and must require a jury to look at the mental state of the speaker defendant. 135 SCt at 2012. Here, the statute at issue has two separate mens rea requirements – purposeful and reckless – and therefore does not run afoul of the narrow holding of Elonis. Cf. United States v. Kirsch, 151 FSupp.3d 311, 317-318 (W.D.N.Y. 2015) ("First, Elonis is a case of statutory construction, and as such, is limited to 18 USC § 875 (c). No case reported thus far extends Elonis's holding beyond § 875 (c)."); United States v. White, 810 F3d 212, 220 (4th Cir. 2016) ("[I]mportantly, the Court's holding in Elonis was purely statutory; and, having resolved the question on statutory grounds, the Court declined to address whether a similar subjective intent to threaten is a necessary component of a 'true threat' for purposes of the First Amendment.").

7

harm. In other words, "[s]omeone who acts recklessly with respect to conveying a threat necessarily grasps that he is not engaged in innocent conduct. He is not merely careless. He is aware that others could regard his statements as a threat, but he delivers them anyway." Elonis, 135 SCt at 2015 (Alito, J., concurring in part and dissenting in part.). Therefore, contrary to Major's assertions, recklessness clearly requires an analysis of the accused's state of mind at the time of the crime alleged.

For the same reasons, we reject Major's argument that communicating a threat of violence in a reckless manner does not meet the definition of a true threat. The United States Supreme Court has defined a true threat to include "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," Black, 538 U. S. at 359 (citations omitted); however, "[t]he speaker need not actually intend to carry out the threat," id. Major argues that this definition requires a specific intent to communicate a threat which, he contends, is not required within the reckless scienter. However, as recklessness requires a knowing act – i.e., *conscious* disregard of a substantial risk – it fits within the definition of a true threat.

8

Because former OCGA § 16-11-37 (a) requires that a person communicate a threat of violence in a purposeful or reckless manner, both of which are true threats and not protected speech, it does not violate the First Amendment's right to free speech. Accordingly, we find that the reckless mens rea does not render the former version of OCGA § 16-11-37 (a) unconstitutionally overbroad.

2. *Void for Vagueness*

Major further contends that the statute's reckless scienter renders the statute void because it lacks a clear and discernable definition as to what constitutes a threat. It is well established that "[t]he void for vagueness doctrine of the due process clause requires that a challenged statute or ordinance give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated and provide sufficient specificity so as not to encourage arbitrary and discriminatory enforcement." Parker v. City of Glennville, 288 Ga. 34, 35 (1) (701 SE2d 182) (2010).

Once again, Major alleges that the statute focuses on the listener's reaction to the communicated threatening language and not the intent of the speaker, muddying the lines of what is, and what is not, constitutionally protected speech.

9

However, the statute can clearly "be read and understood by a person of ordinary intelligence seeking to avoid its violation." Lanthrip v. State, 235 Ga. 10, 11 (218 SE2d 771) (1975). As discussed above, the plain language of the statute prohibits a person from threatening, in a reckless manner, to commit any crime of violence. A person of ordinary intelligence can clearly understand the meaning of threatening to commit any crime of violence. Moreover, as discussed in Division 1, both Georgia and Federal law plainly define recklessness as proper criminal mens rea requirement. Based on the foregoing, we affirm the trial court's decision upholding the constitutionality of former OCGA § 16-11-37 (a) against a vagueness challenge.

3. *As-Applied Challenge*

Finally, Major contends that the statute is unconstitutional as applied to him. Namely, he argues that, since he injected the phrase "Lord, please save me" into the post, the statement was therapeutic and/or religious in nature and did not reflect an intent to commit a violent act. "An as-applied challenge 'addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party.'" (Citation and punctuation omitted.) Hertz v. Bennett,

10

294 Ga. 62, 66 (2) (c) (751 SE2d 90) (2013).  See also <u>Harris v. Mexican Specialty Foods, Inc.</u>, 564 F3d 1301, 1308 (11th Cir. 2009).

The crux of Major's argument is that he did not possess the requisite intent in order for his Facebook post to qualify as a threat to commit a crime of violence.[4]  However, whether an accused acted with the required criminal intent is a question of fact reserved for the jury, not this Court.  See <u>Boyd v. State</u>, 284 Ga. 46 (1) (663 SE2d 218) (2008).  Based on the evidence in the record before us, we find that the statute has not been unconstitutionally applied to Major.

<u>Judgment affirmed.  All the Justices concur.</u>

Decided May 15, 2017.

OCGA § 16-11-37 (a); constitutional question. Hall Superior Court. Before Judge Oliver.

<u>John W. Rick</u>, for appellant.

_____

[4] Major does not raise, and we do not address, whether the facts as stipulated by the parties — including his Facebook post as quoted above – is insufficient as a matter of law to establish a violation of former OCGA § 16-11-37 (a).

11

Lee Darragh, District Attorney, Alicia D. Taylor, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.